**In the United States District Court
for the District of Kansas**

———————

Case No. 24-cr-40038-TC

———————

UNITED STATES OF AMERICA,

*Plaintiff*

v.

MICHAEL DORSCH,

*Defendant*

———————

**MEMORANDUM AND ORDER**

Michael Dorsch was arrested after officers saw him exercising control over a stolen vehicle. After officers searched the vehicle and Dorsch's person, a grand jury indicted Dorsch on one count of possessing a firearm as a prohibited person in violation of 28 U.S.C. § 922(g)(1) and one count of receipt or possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d). Doc. 1. Dorsch now moves to suppress the evidence found at the scene and DNA evidence that officers collected later. Doc. 16. For the following reasons, Dorsch's motion is denied.

**I**

**A**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Searches and seizures—of people, their homes, and their personal property—are presumed unreasonable when conducted without a warrant. *Id*.; *United States v. Karo*, 468 U.S. 705, 717 (1984). And "[a]t the Amendment's 'very core' stands 'the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.'" *Florida v. Jardines*, 569 U.S. 1, 6 (2013) (quoting *Silverman v. United States*, 365 U.S. 505, 511 (1961)).

The home is sacrosanct, but the protections extend beyond the walls of an individual's home. To fully protect the rights of individuals in their homes, the Supreme Court "considers curtilage—the area immediately surrounding and associated with the home—to be part of the home itself for Fourth Amendment purposes." *Collins v. Virginia*, 584 U.S. 586, 592–93 (2018) (internal citations and quotation marks omitted). As a result, the Fourth Amendment is implicated when officers investigate a crime on a home's curtilage "by physically entering and occupying the area to engage in conduct not explicitly or implicitly permitted by the homeowner." *Jardines*, 569 U.S. at 6. Without a warrant, such an entry is presumptively unreasonable. *Collins*, 584 U.S. at 593.

In contrast, the Fourth Amendment does not prevent officers from entering open fields for investigatory purposes—i.e., areas that are not considered curtilage—even if the areas are privately owned. *Jardines*, 569 U.S. at 6 (citing *Hester v. United States*, 265 U.S. 57 (1924)). These distinctions among the home, its curtilage, and the open fields beyond the curtilage are "as old as the common law." *Id.* at 6–7 (citing 4 W. Blackstone, Commentaries on the Laws of England 223, 225 (1769)). A defendant has the burden to show the Fourth Amendment is implicated by demonstrating that officers crossed into curtilage, rather than an open field, to engage in conduct not permitted by the homeowner's explicit or implicit license. *United States v. Carloss*, 818 F.3d 988, 995 (10th Cir. 2016). Once the defendant carries that burden, the Government must prove the warrantless conduct in question was reasonable. *United States v. Carter*, 360 F.3d 1235, 1241 (10th Cir. 2004).

**B**

**1.** On June 4, 2024, Sergeant Glenn Hawks with the Shawnee County Sheriff's Office learned that a stolen vehicle had been spotted near the area where he was working that day.[1] Hawks knew the vehicle's license plate number, that it was a gold 2004 Jeep Grand Cherokee, and that it was seen around the intersection of Southeast 17th Steet and Kansas Avenue in Topeka, Kansas. Hawks drove toward that area, located the unoccupied Jeep parked at the end of the driveway at a residence on Van Buren Street, and verified that the license plate

---

[1] The following facts were found based on the witnesses' testimony at the suppression hearing.

number on the Jeep matched the one he was provided. The rear bumper of the vehicle was roughly two paces off the street.

While parked on a public street, Hawks began to surveil the residence. He also called for additional officers to assist. Eventually, an individual, later identified as Michael Dorsch, exited the residence and walked toward the Jeep. Hawks saw the Jeep's lights flash, which indicated to Hawks that Dorsch had unlocked the Jeep or otherwise used the key fob associated with the vehicle. Hawks observed as Dorsch opened the rear passenger door, the rear hatch, and the driver's door. It was not entirely evident to Hawks what Dorsch was doing, but he saw Dorsch appearing to manipulate items inside the vehicle. Dorsch then popped open the hood of the vehicle and stood behind it. Because he could no longer see what Dorsch was doing behind the hood, Hawks decided to initiate an arrest.

Hawks and two other officers directed Dorsch to walk away from the car and toward the edge of the property, show his hands, and get on the ground. Dorsch complied. The officers handcuffed Dorsch and took him to the side of the patrol vehicle, which was still parked in the street. The officers spoke with the residents of the home, conducted a search incident to Dorsch's arrest, and then searched the Jeep. They found two 20-gauge shotgun shells in Dorsch's pocket and a sawed-off shotgun under the Jeep's front passenger seat. Officers later relied on this evidence to obtain a search warrant to collect Dorsch's DNA. Forensic testing revealed that Dorsch's DNA was consistent with that found on the shotgun inside the Jeep.

**2.** Dorsch's motion was couched as one for unlawful search. But, as discussed in greater detail below, the focus is really upon the authority of Hawks to conduct an arrest while Dorsch stood at the front of the stolen Jeep in the driveway.[2] As a result, the details of the encounter matter.

---

[2] Dorsch does not dispute that Hawks had probable cause to arrest him based on suspicion that Dorsch was in possession of a stolen vehicle. *See District of Columbia v. Wesby*, 583 U.S. 48, 56 (2018) ("A warrantless arrest is reasonable if the officer has probable cause to believe that the suspect committed a crime in the officer's presence."). Nor does he dispute that, upon arrest, Hawks could conduct a search incident to arrest. *See* Doc. 21 at 1 (clarifying that Dorsch's motion only challenged the officers' entry onto the property to gather information about the Jeep and to arrest Dorsch but did not directly challenge any search of the Jeep or Dorsch's person); *Birchfield v. North Dakota*, 579 U.S. 438, 460 (2016) (quoting *United States v. Robinson*, 414 U.S. 218,

...

To arrest Dorsch, Hawks walked from a public street onto the driveway where the stolen Jeep was parked. The Jeep's license plate, which identified it as the stolen vehicle, was visible from that public street. And while there was no sidewalk in the area, an individual standing on the street could nearly touch the stolen Jeep—the rear bumper was roughly six feet off the road.

The driveway of the home stretched from the public street toward the home on the left side of the property. Looking from the street, the home has a front yard immediately in front of it and a driveway that is adjacent to the residence on the left side. At the time of the encounter, two cars were parked in the driveway: A blue truck was parked closest to the home, and the gold Jeep was parked behind the truck. And again, as noted, the Jeep was six feet from where the driveway meets the road.

There was no fence in the front area of the home. The front yard had a naturally grown tree in the middle. And several items were scattered throughout the yard, including a lawnmower, a playpen, and multiple bicycles. The area directly in front of the residence was worn to dirt, rather than being a grassy area like the rest of the front yard. That dirt area extended to the driveway, and it also connected to a worn-down path that crossed through the front yard and connected to the street. In other words, if a social guest or delivery driver had arrived at the home, he or she would have likely chosen either to walk up the driveway past the Jeep and toward the front door or to walk across the front lawn on the worn path.

There is another residence to the left of the home where Dorsch was seen. That residence has a yard that is enclosed by a fence, which separates its yard from the property where Dorsch was arrested. There is a strip of grass a few feet wide between the neighbor's fence and the driveway where the Jeep was parked.

Once he decided to arrest Dorsch, Hawks parked his vehicle on the street right in front of the residence. Dorsch was still standing at the hood of the Jeep when another officer, Sergeant Metz, began to

---

235 (1973)) (explaining that the search-incident-to-arrest doctrine authorizes warrantless searches of an arrestee's person because "the mere 'fact of the lawful arrest' justifies 'a full search of the person'"). And finally, Dorsch disclaims any challenge to the search of the stolen vehicle. *Byrd v. United States*, 584 U.S. 395, 409 (2018) (noting that a person exercising control over a stolen automobile cannot challenge the lawfulness of a search of that automobile).

order him to show his hands. Metz appeared to stand at the edge of the neighbors' yard as he ordered Dorsch to walk toward him and then to get on the ground. Complying, Dorsch walked toward Metz (and away from the home), stepped off the driveway and into the grassy area between the driveway and the neighbor's fence, and then got on the ground and put his hands behind his head. Another officer, Lieutenant Louderback, handcuffed Dorsch and took him to the police car.

After Dorsch was secured, the officers spoke to the other individuals who were present at the residence. At no point did they ask the officers to leave. From this encounter the officers learned that Dorsch did not live at the residence, but he had permission to be there and had stayed overnight the day before his arrest.

**3.** Dorsch now moves to suppress the firearm evidence found at the scene, as well as the DNA evidence that officers later collected. Doc. 16.[3] Dorsch argues that officers unlawfully entered the curtilage of the residence for the purpose of finding more information about the stolen vehicle and to arrest him.[4] *Id.* at 2–5. These arguments were fully addressed and argued at an evidentiary hearing. Doc. 22.

## II

The officers' arrest of Dorsch on the driveway while he stood in front of a stolen vehicle did not violate the Fourth Amendment. Accordingly, Dorsch's motion is denied.

---

[3] All document citations are to the document and page number assigned in the CM/ECF system.

[4] In its response brief, the Government disputed Dorsch's standing to challenge any search or seizure on the grounds that he had a privacy or property interest in the property where he was arrested. Doc. 18 at 9–10. This is because Dorsch did not live at the residence but was merely staying there as a guest. *Id.*; *United States v. Maestas*, 639 F.3d 1032, 1035–36 (10th Cir. 2011) (explaining that a social guest at a residence must establish a "degree of acceptance into the household" or an "ongoing and meaningful connection to [the host's] home" to show that he or she had a reasonable expectation of privacy in the residence). It is unnecessary to reach this argument because Dorsch did not have an expectation of privacy in the part of the property the officers entered to arrest him even if he had a privacy interest in the residence itself.

## A

The thrust of Dorsch's argument is that the officers could not encounter Dorsch while he was standing in the driveway in front of the stolen Jeep. Doc. 16 at 5–6. It is not that they lacked authority to arrest him based on probable cause, but rather that approaching Dorsch while he was under the hood of the stolen Jeep on the driveway violated the Fourth Amendment. Success of that motion implicates the curtilage doctrine.[5]

Dorsch contends that the officers' conduct was unreasonable because they entered the curtilage of the residence without a warrant. Doc. 16 at 3–5. According to Dorsch, the officers' mere entry onto the driveway to arrest him and investigate the stolen vehicle was sufficient to implicate the Fourth Amendment and require the officers to obtain a warrant even though they were able to see him a few feet away while parked on a public street. *Id.*; *United States v. Cavely*, 318 F.3d 987, 993 (10th Cir. 2003) (explaining that the Fourth Amendment's protection of the home extends to the home's curtilage); *Florida v. Jardines*, 569 U.S. 1, 11 (2013) (holding that a search occurs when officers physically intrude on curtilage to gather evidence).

---

[5] In *United States v. Santana*, 427 U.S. 38 (1976), the Supreme Court held that officers' entry into a home to arrest a fleeing suspect was permissible under the Fourth Amendment. Before the suspect retreated into her home to evade the police, the officers saw her standing directly in the doorway of her residence. *Santana*, 427 U.S. at 40 n.1. The Supreme Court held that she was arrested in a public place, making a warrant unnecessary, because "[s]he was not merely visible to the public but was as exposed to public view, speech, hearing, and touch as if she had been standing completely outside her house." *Id.* at 42. That holding seemingly resolves Dorsch's challenge. But even assuming *arguendo* that the evolution of the curtilage doctrine since *Santana* calls that holding into question as Dorsch argues, Doc. 23 at 5–7, the end result is the same: The driveway near the street where the officers lawfully saw Dorsch exercising dominion and control over the stolen vehicle was not curtilage. *See Rieck*, 651 F.3d at 1193 (finding the end of the driveway was not curtilage where it was completely visible to the public and the residents had taken no steps to make the area private). As a result, the officers could arrest him on suspicion of possessing a stolen vehicle. *See Santana*, 427 U.S. at 42; *United States v. Hatfield*, 333 F.3d 1189, 1198 (10th Cir. 2003) (explaining that police may enter parts of an individual's property that are not curtilage at any time without violating the Fourth Amendment).

Because curtilage is an area where, like the home, "privacy expectations are most heightened," *Collins v. Virginia*, 584 U.S. 586, 592 (2018), the Fourth Amendment's protection of the home extends to curtilage, too. *United States v. Ronquillo*, 94 F.4th 1169, 1173 (10th Cir. 2024). Curtilage is "the area to which extends the intimate activity associated with the sanctity of a man's home and the privacies of life." *Oliver v. United States*, 466 U.S. 170, 180 (1984).

A fact-specific inquiry governs the determination of whether an area can be considered curtilage of a home. *Cavely*, 318 F.3d at 993. The Supreme Court articulated four factors that help guide the analysis in *United States v. Dunn*, 480 U.S. 294 (1987). Those factors include the proximity of the area to the home, whether an enclosure surrounds both the area and the home, the nature of the use to which the area is put, and the steps that the residents have taken to protect the area from outside observation. *Ronquillo*, 94 F.4th at 1173–74. The factors are a helpful guide, but the Supreme Court has cautioned that they do not produce "a finely tuned formula that, when mechanically applied, yields a 'correct' answer to all extent-of-curtilage questions." *Dunn*, 480 U.S. at 301. Rather, the primary inquiry is "whether the area in question is so intimately tied to the home itself that it should be placed under the 'umbrella' of Fourth Amendment protection." *Id.*; *accord Ronquillo*, 94 F.4th at 1174.

## B

In some cases, it may be difficult to determine whether a given area outside the home is, in fact, curtilage warranting the Fourth Amendment's protection. *See Ronquillo*, 94 F.4th at 1171 ("Courts have agonized over the parameters of curtilage since Justice Holmes first hinted at the idea nearly a century ago . . . ."). This is not one of those close cases. The end of the driveway near the public street where the officers encountered Dorsch is not curtilage.

The first factor to consider is the proximity of the yard and driveway where the officers stepped to the home itself. The officers stood on the outer boundary of the property near the street when they first made their presence known to Dorsch. As they directed Dorsch to walk toward them and show his hands, they stood only a few feet away from where the driveway meets the road. *See Rieck v. Jensen*, 651 F.3d 1188, 1193 (10th Cir. 2011) (finding an officer did not enter a home's curtilage when the officer only entered a portion of the driveway within a few feet of the entrance); *but see Ronquillo*, 94 F.4th at 1174 (distinguishing a detached garage that was only twenty-five feet from the

7

main residence and fell within the curtilage of the home from the driveway in *Rieck* that was several hundred feet away from the home). Given that the spot where the Jeep was parked was less than six feet from the street and was closer to the street than the house, this factor cuts against Dorsch's argument. *See Rieck*, 651 F.3d at 1193 (applying the curtilage doctrine differently to portions of the driveway based on their relative proximity to the home).

The other three factors also undermine Dorsch's claim that the driveway where he was arrested was curtilage. Dorsch contends that the neighbor's fence next to the driveway served to partially enclose the driveway with the residence where Dorsch was visiting. Doc. 16 at 4. An enclosure, like a fence or gate, might suggest that an area of land is curtilage if the enclosure serves to make that area "readily identifiable as part and parcel of the house." *Ronquillo*, 94 F.4th at 1174. And the enclosure need not fully surround the contested areas; partially enclosed areas have supported a finding of curtilage. *United States v. Cousins*, 455 F.3d 1116, 1122 (10th Cir. 2006); *Collins*, 584 U.S. at 593–94 (explaining that the top portion of a driveway that was enclosed on two sides by a brick wall and on a third side by the house suggested that the top portion of the driveway was curtilage). But the partial enclosure Dorsch attempts to rely on is a fence on and enclosing someone else's lawn. There is no colorable argument that the portion of the neighbor's fence separating the neighbor's yard from other residences serves to enclose the driveway and front yard of the residence where Dorsch was staying as to make the driveway and yard part of the residence itself. *See Rieck*, 651 F.3d at 1193 (declining to find that an area within a fence was curtilage because the fence did not serve to "demark a specific area of land immediately adjacent to the house").

Next consider how the contested areas are used. Dorsch has not made any argument that the driveway is used for anything other than parking vehicles. *Rieck*, 651 F.3d at 1193 ("[A] driveway abutting and clearly visible from a public highway is not a suitable setting for intimate activities associated with a home."). True, the Tenth Circuit has found that "the activity of storing a vehicle *in a detached garage* is intimately tied to home life." *Ronquillo*, 94 F.4th at 1174 (emphasis added). But it has not extended that protection to someone parking a car at the edge of a driveway abutting a public street, absent evidence that the vehicle was fully enclosed or that the driveway was used for more intimate activities such as additional living quarters. *See id.* There is nothing in the record to suggest that the driveway where the Jeep was parked—with its license plate visible to the street—was a place that could

reasonably be considered an area of intimate activities. *Cousins*, 455 F.3d at 1123 (finding that a side yard used for gardening did not appear to be an area "intended as a private space for gardening"); *see also United States v. Vasquez*, No. 22-1294, 2024 WL 34132 at *3 (10th Cir. Jan. 3, 2024) (explaining that the "classic exemplar" of curtilage—the front porch—"implicates different privacy interests than a front yard abutting the street").

Finally, no steps were taken to shield the driveway and front yard from public view. Each place where the officers stepped could be easily seen by anyone on the public street outside of the residence. *See Cousins*, 455 F.3d at 1123–24 (explaining that the residents' actions were not consistent with an expectation of privacy when they knew anyone could see and report illegal conduct happening on the areas they claimed were curtilage); *Rieck*, 651 F.3d at 1193 (finding that the complete visibility of an area from the public road weighed against a finding of curtilage). As a result, the totality of the circumstances in this case suggests that the areas where the officers stepped were not curtilage. That means they were open fields, which "the police can enter . . . at any time for investigative purposes without violating the Fourth Amendment." *Hatfield*, 333 F.3d at 1198. Dorsch has therefore failed to meet his burden to show that the officers violated the Fourth Amendment by stepping onto the property of the residence where he was staying for the purpose of searching the stolen Jeep and arresting him for possessing it.

## III

For the foregoing reasons, Dorsch's Motion to Suppress Evidence, Doc. 16, is DENIED.

It is so ordered.

Date: July 22, 2025                             s/ Toby Crouse
                                                Toby Crouse
                                                United States District Judge

9